IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | CHAPTER 11 |
| | § | |
| BRAZOS ELECTRIC POWER | § | CASE NO. 21-30725 (DRJ) |
| COOPERATIVE, INC., | § | |
| | § | |
| Debtor.[1] | § | |

**LIMITED OBJECTION OF ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC. TO DEBTOR'S EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING THE DEBTOR TO OBTAIN POSTPETITION FINANCING, (B) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL, (C) GRANTING LIENS AND PROVIDING CLAIMS WITH SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (D) GRANTING ADEQUATE PROTECTION TO THE PREPETITION REVOLVING LENDERS AND RUS PARTIES, (E) MODIFYING THE AUTOMATIC STAY, (F) SCHEDULING A FINAL HEARING, AND (G) GRANTING RELATED RELIEF**

TO THE HONORABLE DAVID R. JONES, CHIEF U.S. BANKRUPTCY JUDGE:

Electric Reliability Council of Texas, Inc. ("ERCOT") files this *Limited Objection* (the "Objection") to the *Debtor's Emergency Motion for Entry of Interim and Final Orders (A) Authorizing the Debtor to Obtain Postpetition Financing, (B) Authorizing the Debtor to Use Cash Collateral, (C) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (D) Granting Adequate Protection to the Prepetition Revolving Lenders and RUS Parties, (E) Modifying the Automatic Stay, (F) Scheduling a Final Hearing, and (G) Granting Related Relief* [Docket No. 553] (the "DIP Financing Motion"), filed by Brazos Electric Power Cooperative, Inc. (the "Debtor") and in support thereof respectfully states as follows:

---

[1] The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number is 4729. Additional information regarding this case may be obtained on the website of the Debtor's claims and noticing agent at http://cases.stretto.com/Brazos. The Debtor's address is 7616 Bagby Avenue, Waco, TX 76712.

**LIMITED OBJECTION TO MOTION TO APPROVE DIP FINANCING - Page 1**

I. **PRELIMINARY STATEMENT**

1. ERCOT does not oppose the Debtor obtaining DIP Financing. As set forth herein, ERCOT's objections relate to the provision of liens and/or encumbrances on property, including, but not limited to, instruments and cash that are subject to ERCOT's offset and recoupment rights pursuant to the ERCOT Protocols.[2] ERCOT has circulated to Debtor's counsel proposed language to address preserving ERCOT's rights. As of the filing of this Objection, agreement had not been reached.

II. **ERCOT BACKGROUND**

2. In 1999, the Public Utility Regulatory Act (the "PURA") was amended to require the Public Utility Commission of Texas (the "PUC") to certify an "independent organization" to among other roles, ensure "that electricity production and delivery are accurately accounted for among the generators and wholesale buyers and sellers in the region." Tex. Util. Code § 39.151(a).

3. The PUC designated ERCOT as the independent organization mandated by PURA. 16 Tex. Admin. Code § 25.361(b). ERCOT's unique role includes managing the flow of electric power for the bulk power system in the ERCOT Region to approximately 26 million Texas end-use customers. ERCOT also performs financial settlement for the competitive wholesale bulk power market, and administers retail switching for nearly 8 million premises.

4. ERCOT is a Texas non-profit corporation that acts as an arm of state government. It is subject to the "complete authority" of the PUC, with oversight from the Texas legislature.

---

[2] The "ERCOT Protocols" are defined as follows: "the document adopted by ERCOT, including any attachments or exhibits referenced in that document, as amended from time to time, that contains the scheduling, operating, planning, reliability, and Settlement (including Customer registration) policies, rules, guidelines, procedures, standards, and criteria of ERCOT. For the purposes of determining responsibilities and rights at a given time, the ERCOT Protocols, as amended in accordance with the change procedures(s) described in the ERCOT Protocols, in effect at the time of the performance or non-performance of an action, shall govern with respect to that action." The ERCOT Protocols are voluminous and may be found at http://www.ercot.com/mktrules/nprotocols/current.

**LIMITED OBJECTION TO MOTION TO APPROVE DIP FINANCING - Page 2**

*See* Tex. Util. Code § 39.151(d).  ERCOT's members represent seven market segments: (a) consumers, (b) cooperatives, (c) independent generators, (d) independent power markets, (e) independent retail electric providers, (f) investor-owned utilities, and (g) municipals.

5. ERCOT does not own, operate, or have enforcement authority over any power generation facilities or any electric transmission or distribution lines or substations.  ERCOT does not sell or send bills for retail electricity to residences or businesses.  Nor does ERCOT control or operate electric service at the distribution, local, neighborhood, or individual levels.  And ERCOT does not establish pricing or rates for retail electric customers and does not have any direct customer relationships.  ERCOT's roles and responsibilities are statutorily prescribed by PURA.

6. In connection with its operation of the wholesale electricity market, ERCOT has a statutory obligation to "ensure that electricity production and delivery are accurately accounted for among the generators and wholesale buyers and sellers" in the ERCOT footprint.  Tex. Util. Code § 39.151(a)(4).  ERCOT fulfills that obligation by accepting payments from buyers of electricity, with ERCOT retaining a sufficient amount to cover costs.  *Id*. at § 39.151(e).  ERCOT essentially serves as the clearinghouse for market transactions between electricity buyers and sellers, ensuring that electricity production, scheduling, and downstream delivery are ultimately timely and accurately accounted for and provided.  ERCOT Protocols at § 1.2(1)(d).

7. The rules and policies governing the ERCOT wholesale market are set forth in the ERCOT Protocols, all of which have been approved by the PUC.  The ERCOT Protocols, which provide the framework for the administration of the ERCOT market, have the force and effect of state law.  *See PUC v. Constellation Energy Commodities Grp.*, 351 S.W.3d 588, 594-95 (Tex.App. – Austin, pet. denied) ("ERCOT protocols are rules that provide the framework for the

administration of the Texas electricity market," and as administrative rules, "have the force and effect of statutes").

## III. PROCEDURAL BACKGROUND

8. On March 1, 2021 (the "Petition Date"), the Debtor filed its voluntary petition for relief under Chapter 11 of title 11 of the United States Code, §§ 101, *et seq.* (as amended, the "Bankruptcy Code"), thereby initiating the above-captioned bankruptcy case (collectively, the "Bankruptcy Case").

9. The Debtor is a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

10. On March 15, 2021, the United States Trustee formed the Official Committee of Unsecured Creditors in the Bankruptcy Case.

11. On May 11, 2021, the Debtor filed the DIP Financing Motion.

12. The hearing to consider the DIP Financing Motion, on an interim basis, is scheduled for May 18, 2021 at 1:00 p.m. (CT).

## IV. OBJECTION

**A. None of ERCOT's Rights Pursuant to the ERCOT Protocols or Otherwise Should be Impaired**

13. The Debtor has scheduled ERCOT as holding an unsecured, non-priority claim in the amount of approximately $2.2 billion, albeit disputed by the Debtor with regard to amount. ERCOT is the largest unsecured creditor of the bankruptcy estate.

14. ERCOT and the Debtor are parties to a Standard Form Market Participant Agreement, effective as of April 1, 2015 (the "Brazos SFA").[3] The Brazos SFA establishes the terms and conditions by which ERCOT and Brazos discharge their respective duties and

---

[3] A true and correct copy of the Brazos SFA is attached hereto as Exhibit "A."

responsibilities under the ERCOT Protocols. Section 5 of the Brazos SFA specifically states that "[Brazos] shall comply with and be bound by, all ERCOT Protocols." Brazos SFA § 5.A.

15. The ERCOT Protocols govern the rights, obligations and responsibilities of ERCOT and participants in the ERCOT market, including the Debtor. Pursuant to the ERCOT Protocols, among other rights, ERCOT possesses rights of offset and/or recoupment against the Debtor which should not be allowed to be impaired by the relief requested in the DIP Financing Motion. Set forth below are representative examples of sections of the ERCOT Protocols that provide for ERCOT's setoff and recoupment rights. Such examples are not exclusive or cumulative of provisions in the ERCOT Protocols or otherwise that grant ERCOT the right to setoff or recoup nor are they exclusive of any common law rights ERCOT may have with regard to setoff or recoupment.

16. Section 9 of the ERCOT Protocols is entitled "Settlement and Billing." "Settlement is the process used to resolve financial obligations between a Market Participant [Brazos] and ERCOT, including administrative and miscellaneous charges." ERCOT Protocols § 9.1.1.

   a. <u>DAM and RTM Statements</u>. Section 9.6 of the ERCOT Protocols provides in pertinent part as follows: "ERCOT shall prepare Settlement Invoices on a net basis based on Day-Ahead Market (DAM) Statements, DAM Resettlement Statements, Real-Time Market (RTM) Initial Statements, RTM Final Statements, RTM True-Up Statements and RTM Settlement Statements." ERCOT Protocols § 9.6(1).

   b. <u>CRR Auction Revenue Distribution</u>.[4] Section 9.11 of the ERCOT Protocols governs the payment process for CRR Auction Revenue Distribution. *See* ERCOT Protocols § 9. Section 9.11.3 titled "Partial Payments by Invoice Recipients for CRR Auction Revenue Distribution" provides in pertinent part, "ERCOT shall offset or recoup any amounts owed, or to be owed, by ERCOT to a short-paying Invoice Recipient against amounts not paid by that Invoice Recipient and ERCOT shall apply the amount offset

---

[4] CRR is an acronym that stands for Congestion Revenue Rights. The ERCOT Protocols define a "Congestion Revenue Right (CRR)" as, "A financial commitment that entitles the holder to be charged or to receive compensation (i.e., congestion rent), depending on the instrument when the ERCOT Transmission Grid is congested in the DAM or in Real-Time." ERCOT Protocols § 2.1.

**LIMITED OBJECTION TO MOTION TO APPROVE DIP FINANCING - Page 5**

or recouped to cover the payment shortages by that Invoice Recipient." ERCOT Protocols § 9.11.3(c).

c. <u>CRR Balancing Account</u>. Section 9.13 of the ERCOT Protocols is titled "Payment Process for the CRR Balancing Account." Section 9.13.2.3(1)(c) titled "Partial Payments by Invoice Recipients for Resettlement of CRR Balancing Account" provides, "ERCOT shall offset or recoup any amounts owed, or to be owed, by ERCOT to a short-paying Invoice Recipient against amounts not paid by that Invoice Recipient and ERCOT shall apply the amount offset or recouped to cover payment shortages by that Invoice Recipient." ERCOT Protocols § 9.13.2.3(1)(c).

d. <u>Partial Payment by Invoice Recipients</u>. Section 9.19(1)(c) of the ERCOT Protocols provides in pertinent part as follows: "ERCOT shall offset or recoup any amounts owed, or to be owed, by ERCOT to a short-paying Invoice Recipient against amounts not paid by that Invoice Recipient, and ERCOT shall apply the amount offset or recouped to cover short pays by that Invoice Recipient. ERCOT may, in its sole discretion, hold credit Invoices and use those funds to pay subsequent Settlement Invoices as they become due." ERCOT Protocols § 9.19(1)(c).

17. Section 16.11.6.1 is titled ERCOT's Remedies. It provides that in addition to ERCOT's remedies under any agreement, at common law or pursuant to the ERCOT Protocols, ERCOT has additional remedies including the following:

a. <u>No Payments by ERCOT to Market Participant</u>. ERCOT is not required to make any payment to a Market Participant unless and until the Market Participant satisfies the Payment Breach by paying the past due amount in full, including amounts due under Section 16.11.6.1.3, Aggregate Amount Owed by Breaching Market Participant Immediately Due. The payments that ERCOT will not make include Invoice receipts, CRR Auction revenues, CRR credits, reimbursements for short payments and any other reimbursements or credits under any and all other agreements between ERCOT and the Market Participant. ERCOT shall retain all such amounts, and may apply all withheld funds toward the payment of the delinquent amount(s), until the Market Participant has fully paid all amounts owed to ERCOT under any agreements and these Protocols. If the Market Participant should fail to pay the full amount due within the cure period, ERCOT may apply all funds it withheld toward the payment of the delinquent amount(s). ERCOT Protocols § 16.11.6.1.1.

b. <u>ERCOT May Draw on, Hold or Distribute Funds</u>. Upon a Payment Breach, ERCOT, at its option, without notice to the Market Participant and in its sole discretion, may immediately, or at any time before the Market Participant pays the past due amount in full, including amounts due under Section 16.11.6.1.3, Aggregate Amount Owed by Breaching Market Participant Immediately Due, draw on, hold or distribute to other Market Participants any Financial Security or other funds of the Market Participant in ERCOT's possession. If the funds drawn exceed the amount applied to any Payment

Breach, then ERCOT may hold those funds as Financial Security. ERCOT Protocols § 16.11.6.1.2.

c. <u>Aggregate Amount Owed by Breaching Market Participant Immediately Due</u>. ERCOT shall aggregate all amounts due it by the Market Participant under any agreement with ERCOT and these Protocols into a single amount to the fullest extent allowed by law. The entire unpaid net balance owed to ERCOT by the Market Participant, at ERCOT's option, and its sole discretion, is immediately due and payable without further notice and demand for payment. Any such notice and demand for payment are expressly waived by the Market Participant. ERCOT Protocols § 16.11.6.1.3.

d. <u>Repossession of CRRs by ERCOT</u>. ERCOT, at its sole discretion, may repossess CRRs held by a Market Participant with a Payment Breach or other Default. ERCOT shall effect that repossession by sending a written notice to the Market Participant of the repossession and by removing the CRRs from the Market Participant's CRR account. CRRs that settle in the same calendar month as the repossession but subsequent to the effective date of the repossession shall be voided. The Market Participant will neither be charged, nor entitled to credit, for the voided CRRs in the DAM Settlement. ERCOT shall offer a portfolio of CRRs containing all of the remaining unvoided repossessed CRRs, with each repossessed CRR in its existing configuration, in a one-time auction to Market Participants (other than the Market Participant(s) in Payment Breach or other Default) for sale to the highest bidder with a positive bid price for the entire portfolio. PTP Options with Refund and PTP Obligations with Refund will be voided and will not be included in the portfolio of repossessed CRRs available in the one-time auction. ERCOT shall offset net revenues from that sale against amounts owed to ERCOT by the Market Participant. If revenues from the sale exceed amounts owed to ERCOT then the excess shall be remitted to the Market Participant. If ERCOT receives no positive bids for the portfolio of CRRs in the one-time auction, ERCOT shall void all of the repossessed CRRs.[5] ERCOT Protocols § 16.11.6.1.4.

18. The ERCOT Protocols expressly and clearly provide ERCOT mandatory offset and recoupment rights. The Debtor has scheduled ERCOT as holding a disputed claim in the amount of approximately $2.2 billion. As reflected in the ERCOT Protocols, RTM True-Up Settlement Statements are posted 180 calendar days after an Operating Day. Accordingly, there are true-ups that take place well after the Operating Day to which they relate. There are ongoing

---

[5] [NPRR 1023: Replace this paragraph with the following upon system implementation:] – ERCOT, at its sole discretion, may repossess CRRs held by a Market Participant in Default under an Agreement with ERCOT. ERCOT shall effect that repossession by sending a written notice to the Market Participant of the repossession and by removing the Market Participant's access to the repossessed CRRs. The repossessed CRRs will be handled as specified in Section 16.11.6.1.6, Liquidation of Repossessed or Forfeited CRRs.

**LIMITED OBJECTION TO MOTION TO APPROVE DIP FINANCING - Page 7**

true-ups relating to the pre-petition time period that ERCOT is escrowing which are reflected in the Settlement Invoices line item in the chart below.

19. There are also CRRS that are settling that were acquired by the Debtor pre-petition which are accounted for in the two line items listed below titled "CRR Auction Revenue Distribution" and "CRR Balancing Account Refunds."

20. The following table reflects the amounts related to the prepetition time period being escrowed and held by ERCOT as of May 14, 2021 pursuant to the ERCOT Protocols:

| Pre-Petition Escrow (cash held by ERCOT in escrow) | |
|---|---|
| **Source** | **Amount** |
| Settlement Invoices | $18,185,670.07 |
| CRR Auction Revenue Distribution | $2,453,210.75 |
| CRR Balancing Account Refunds | $646,041.94 |
| Miscellaneous Credits | $1,471.04 |
| Total: | $21,286,393.80 |

**B.   The Court Should Not Approve Any Relief in the DIP Financing Motion that Would Impair ERCOT's Setoff and Recoupment Rights and Rights in Collateral**

21. In the DIP Financing Motion, the Debtor asserts that the statutory bases for the relief requested therein are sections 105, 361, 362, 363, 364, 503, 506(c) and 507 of title 11 of the United States Code.

22. Section 553(a) of the Bankruptcy Code provides in pertinent part, "Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, . . .." 11 U.S.C. § 553.

23. Section 506(a)(1) of the Bankruptcy Code provides in pertinent part, "An allowed claim of a creditor secured by a lien on property in which the estate has an interest, <u>or that is</u>

subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in such property, or to the extent of the amount subject to setoff, as the case may be, . . .. 11 U.S.C. § 506(a)(1) (emphasis added).

24. It is clear from the express language of section 553 of the Bankruptcy Code that relief granted under section 364 of the Bankruptcy Code may not affect rights that ERCOT has under section 553 of the Bankruptcy Code. The relief summarized in the DIP Financing Motion and the language proposed in the Debtor's proposed *Interim Order (A) Authorizing the Debtor to Obtain Postpetition Financing, (B) Authorizing the Debtor to Use Cash Collateral, (C) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (D) Granting Adequate Protection to the Prepetition Revolving Letters and RUS Parties, (E) Modifying the Automatic Stay, (F) Scheduling a Final Hearing, and (G) Granting Related Relief* [Docket No. 553-2] (the "Proposed Interim Order"), however, could be construed to have the effect of granting a priming lien that primes ERCOT's rights of setoff and recoupment.

25. In the DIP Financing Motion, the Debtor states that if the DIP Financing is approved it will be secured by "granting to the DIP Collateral Agent for the benefit of the DIP Secured Parties valid, enforceable, non-avoidable and automatically perfected liens pursuant to section 364(c)(2) and 364(c)(3) of the Bankruptcy Code and *pari passu* and priming liens pursuant to section 364(d) of the Bankruptcy Code on all prepetition and postpetition property of the Debtor's estate (other than certain excluded property as provided in the DIP Documents (the "DIP Excluded Property") and all proceeds thereof . . . . DIP Financing Motion ¶ 6.f.

26. Paragraph 7 of the Proposed Interim Order provides in pertinent part as follows:

As security for the DIP Obligations, effective and automatically and properly perfected upon the date of this Interim Order . . . the following valid, binding, continuing, enforceable and non-avoidable security interests and liens (all liens and security interests granted to the DIP Collateral Agent, for its benefit and for

> the benefit of the DIP Secured Parties, pursuant to this Interim Order and the DIP Documents, the "**DIP Liens**") are hereby granted upon all prepetition and postpetition property of the Debtor, regardless of where located, whether existing on the Petition Date or thereafter acquired, including without limitation, any and all cash of the Debtor (whether maintained with the DIP Agent or otherwise) and any investment of cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, goodwill, commercial tort claims and claims that may constitute commercial tort claims (known or unknown), chattel paper, interests, leaseholds, real properties, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock of subsidiaries, wherever located, and the proceeds, products, rents and profits of the foregoing, . . ..

Proposed Interim Order ¶ 7.

27. This is not allowed by the plain language of the Bankruptcy Code as such relief would render section 553 of the Bankruptcy Code a nullity. Further, there is no adequate protection that has been offered should §364(d) apply nor can any meaningful adequate protection be given to protect ERCOT's offset and recoupment rights.

28. The Proposed Interim Order provides for the preservation of the RUS Parties' setoff rights pending a final hearing on the DIP Financing Motion. ERCOT should be granted the same protection.

29. In addition, the Proposed Interim Order and the DIP Loan Documents also provide for Adequate Protection Liens for both the RUS and the Prepetition Revolving Lenders that could be interpreted to prime ERCOT's offset and recoupment rights. ERCOT does not consent to this treatment and objects to this relief.

30. All of ERCOT's offset and recoupment rights, collateral in its possession and rights with regard to Congestion Revenue Rights should be carved out and preserved.

## V.  RESERVATION OF RIGHTS

31.  This Objection is not meant to be all-inclusive of ERCOT's objections to the DIP Financing Motion.  ERCOT reserves its rights to amend or supplement this Objection, to file additional objections to the DIP Financing Motion prior to final approval of same, and to lodge additional objections to the DIP Financing Motion at the hearings to consider interim and final approval of the DIP Financing Motion.

WHEREFORE, PREMISES CONSIDERED, ERCOT respectfully requests that this Court enter an Order sustaining this Objection, requiring that ERCOT's rights be preserved as set forth herein, and that the Court grant such other and further relief to which it may be justly entitled at law or in equity.

Dated: May 18, 2021        **MUNSCH HARDT KOPF & HARR, P.C.**

By:   /s/ Deborah M. Perry
      Kevin M. Lippman
      Texas Bar No. 00784479
      Deborah M. Perry
      Texas Bar No. 24002755
      500 N. Akard Street, Suite 3800
      Dallas, Texas 75201
      Telephone: (214) 855-7500
      Facsimile: (214) 855-7584

ATTORNEYS FOR ELECTRIC RELIABILITY
COUNCIL OF TEXAS, INC.

## CERTIFICATE OF SERVICE

      This is to certify that the undersigned caused a true and correct copy of the foregoing Objection to be served via electronic notice upon the parties who receive electronic notice in this case pursuant to the Court's ECF filing system, on the 18th day of May, 2021.

                                           /s/ Deborah M. Perry
                                           Deborah M. Perry