IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | CASE NO. 21-30725 |
| BRAZOS ELECTRIC POWER | § | |
| COOPERATIVE, INC., | § | Chapter 11 |
| | § | |
| Debtor.[1] | § | |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER EXTENDING
THE EXCLUSIVITY PERIODS TO FILE A CHAPTER 11 PLAN
AND SOLICIT ACCEPTANCES THEREOF**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

Brazos Electric Power Cooperative, Inc. (the "Debtor") files this *Motion for Entry of an Order Extending the Exclusivity Periods to file a Chapter 11 plan and Solicit Acceptances Thereof* (the "Motion"). In support of this Motion, the Debtor respectfully states as follows:

---

[1] The Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number is: Brazos Electric Power Cooperative, Inc. (4729). Additional information regarding this case may be obtained on the website of the Debtor's claims and noticing agent at http://cases.stretto.com/Brazos. The Debtor's address is 7616 Bagby Avenue, Waco, TX 76712.

**RELIEF REQUESTED**

1.     By this Motion, the Debtor seeks entry of an order, substantially in the form attached hereto (the "Order"), extending the period during which the Debtor has the exclusive right to file a chapter 11 plan (the "Filing Exclusivity Period") through and including October 27, 2021, and the deadline under which the Debtor has the exclusive right to solicit votes thereon (the "Solicitation Exclusivity Period" and, together with the Filing Exclusivity Period, the "Exclusivity Periods") through and including December 28, 2021, without prejudice to the Debtor's right to seek further extensions of the Exclusivity Periods.[2]

**JURISDICTION AND VENUE**

2.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

3.     Venue of the Debtor's case in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.     The statutory basis for the relief requested herein is section 1121 of the United States Code (the "Bankruptcy Code").

5.     This Court has constitutional authority to enter final orders with respect to the relief requested herein. The Debtor further confirms its consent to this Court's entry of final orders or judgments on this Motion if it is later determined that, in the absence of the consent of the parties, this Court does not have constitutional authority to enter final orders or judgments.

---

[2] The current exclusivity deadline is June 29, 2021. Rule G.18 of the Procedures for Complex Cases in the Southern District of Texas (the "Complex Case Procedures") provides that "if a motion is filed that complies with Bankr. Loc. R. 9013-1 to extend the time to take any action before the expiration of the period prescribed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Local Rules, the time for taking the action is automatically extended until the Court rules on the motion." By filing this Motion prior to the expiration of the Exclusivity Deadline, such deadline is automatically extended until the Court resolves the Motion.

**FACTUAL BACKGROUND**

6. On March 1, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 the Bankruptcy Code. The Debtor has continued in the possession of its property and has continued to operate and manage its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7. On March 15, 2021, the Office of the United States Trustee (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee"). *See* Dkt. No. 216. The Committee was reconstituted by the U.S. Trustee on March 24, 2021. *See* Dkt. No. 285.

8. Additional information about the Debtor's business and affairs, capital structure, prepetition indebtedness, and the events leading up to the Petition Date can be found in the *Declaration of Clifton Karnei in Support of Chapter 11 Petition and First Day Motions* (the "First Day Declaration") [Dkt. No. 3], which is incorporated herein by reference.

**BASIS FOR RELIEF**

9. A debtor has the exclusive right to propose a chapter 11 plan for the first 120 days of a chapter 11 case pursuant to section 1121(b) of the Bankruptcy Code. Section 1121(c)(3) of the Bankruptcy Code extends the period of exclusivity for an additional 60 days, to an initial maximum of 180 days, where the debtor has filed a chapter 11 plan and is soliciting votes on such plan. "[T]he point of exclusivity is to promote an environment in which the debtor's business may be rehabilitated and a consensual plan may be negotiated." *In re Burns & Roe Enters., Inc.*, No. 00-41610 RG, 2005 WL 6289213, at *4 (D.N.J. Nov. 2, 2005) (internal quotation marks omitted) (quoting H.R. Rep. No. 103–835, at 36 (1994), as reprinted in 1994 U.S.C.C.A.N. 3340, 3344). The Filing Exclusivity Period and Solicitation Exclusivity Period are set to expire on June 29, 2021 and August 30, 2021, respectively, absent further order of the Court.

10. Section 1121(d)(1) of the Bankruptcy Code permits a court to extend a debtor's exclusive periods to file and solicit a plan "for cause." *See* 11 U.S.C. § 1121(d). Specifically, section 1121(d) of the Bankruptcy Code provides that "on request of a party in interest made within the respective periods . . . of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section." *Id*. Although the Bankruptcy Code does not define "cause," bankruptcy courts have discretion to extend exclusivity to promote the orderly, consensual, and successful reorganization of a debtor's affairs. *See In re Timbers of Inwood Forest Assocs., Ltd*., 808 F.2d 363, 372 (5th Cir. 1987) (noting that the court is "not called upon here to decide what factors constitute 'cause' for the extension of the [section 1121] exclusivity period"); *In re Mirant Corp*., Nos. 4-04-CV-476-A, 4-04-CV-530- A, 2004 WL 2250986, at *2 (N.D. Tex. Sept. 30, 2004) ("In virtually every case where an extension has been granted, the debtor showed substantial progress had been made in negotiations toward reorganization."); *see also In re Lehman Bros. Holdings, Inc*., No. 08-13555 (Bankr. S.D.N.Y.), Hr'g Tr. July 15, 2009, 137: 3–6, 8–11 (finding that it is "clear and almost beyond reasonable debate that the debtors should be entitled . . . to as much time as they need to develop their best plan" because "exclusivity was designed, in part, to give debtors that privilege, unless it's being abused"); *In re Borders Grp., Inc*., 460 B.R. 818, 821–822 (Bankr. S.D.N.Y 2011) (noting that "the court has broad discretion in extending or terminating exclusivity").

11. Courts within the Fifth Circuit and in other jurisdictions have held that the decision to extend the exclusivity periods is left to the sound discretion of a bankruptcy court and should be based on the totality of circumstances in each case. *See Mirant*, 2004 WL 2250986, at *2 (noting that the decision to extend exclusivity "lies within the bankruptcy court's discretion"); *In*

*re Express One Int'l, Inc.*, 194 B.R. 98, 100-01 (Bankr. E.D. Tex. 1996) (extending exclusivity based on the totality of the circumstances).

12. In particular, courts within the Fifth Circuit and other jurisdictions examine a number of factors to determine whether there is "cause" for extension of the exclusivity periods. These factors include:

   i. the size and complexity of the case;

   ii. the necessity for sufficient time to permit the debtor to negotiate a chapter 11 plan and prepare adequate information;

   iii. the existence of good faith progress toward reorganization;

   iv. the fact that the debtor is paying its bills as they become due;

   v. whether the debtor has demonstrated reasonable prospects for filing a viable plan;

   vi. whether the debtor has made progress in negotiations with its creditors;

   vii. the amount of time which has elapsed in the case;

   viii. whether the debtor is seeking to extend exclusivity to pressure creditors to submit to the debtor's reorganization demands; and

   ix. whether an unresolved contingency exists.

*See In re New Millennium Mgmt., LLC,* No. 13-35719-H3-11, 2014 WL 792115, at *6 (Bankr. S.D. Tex. Feb. 25, 2014) (listing factors relevant to whether "cause" exists to extend exclusivity periods) (citing *In re GMG Cap. Partners III, L.P.*, 503 B.R. 596, 600-01 (Bankr. S.D.N.Y. 2014)); *see also In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 674 (Bankr. S.D.N.Y. 2006) (applying the same factors and extending the debtors' exclusivity periods).

13. Not all factors are relevant to every case, and the existence of even one of the above-listed factors may be sufficient to extend a debtor's exclusivity periods. *See, e.g., Express One*, 194 B.R. at 100–01 (listing all nine factors later set forth in Adelphia, but determining "cause" to

extend exclusivity existed without finding that every factor was met); *see also In re Excel Maritime Carriers Ltd.*, No. 13-23060-RDD, 2013 WL 5155040, at *2 (Bankr. S.D.N.Y. Sept. 13, 2013) (explaining that the relevance of the factors is context-dependent and that "the ultimate consideration for the Court was what will best move the case forward in the best interest of all parties").

14. Although the party seeking an exclusivity extension bears the burden of demonstrating cause, courts have applied a more lenient standard when determining whether to grant a debtor's first request to extend exclusivity. *See Mirant,* 2004 WL 2250986, at *2 ("The debtor's burden gets heavier with each extension it seeks as well as the longer the period of exclusivity lasts."); *In re Apex Pharm., Inc.*, 203 B.R. 432, 441 (N.D. Ind. 1996) (noting that during the initial 120-day period in which debtors have an exclusive right to file a chapter 11 plan, "bankruptcy courts apply a lesser standard in determining whether the burden of showing 'a reasonable possibility of a successful reorganization within a reasonable time' has been satisfied") (quoting 11 U.S.C. § 1121(b), (c)(2)); *see also Borders*, 460 B.R. at 825 (same).

15. There is extensive precedent for an initial extension of exclusivity. Courts in this district have granted similar relief in recent chapter 11 cases. *See, e.g., In re Gulfport Energy Corp*. No. 20-35562 (DRJ) (Bankr. S.D. Tex. Mar. 23, 2021) (granting 180-day initial extension without prejudice to debtors' ability to seek additional extensions extending the exclusively period by 180 days); *In re Sheridan Holding Co. II, LLC*, 19-35198 (MI) (Bankr. S.D. Tex. Jan. 14, 2020) (same ); *In re IHeart Media, Inc.*, No. 18-31274 (MI) (Bankr. S.D. Tex. July 10, 2018 (same); *In re Seadrill Ltd.*, No. 17-60079 (DRJ) (Bankr. S.D. Tex. Jan. 8, 2018); *In re GenOn Energy, Inc.*, No. 17- 33695 (DRJ) (Bankr. S.D. Tex. Oct. 3, 2017)*; In re Valaris PLC, et al.*, No. 20-34114 (MI) (Bankr. S.D. Tex. Mar. 4, 2021) (granting 120-day initial extension without prejudice to

debtors' ability to seek additional extensions); *In re Diamond Offshore Drilling Inc.*, No. 20-32307 (DRJ) (Bankr. S.D. Tex. Sept. 17, 2020) (same); *In re J.C. Penny Co., Inc.*, No. 20-20182 (DRJ) (Bankr. S.D. Tex. Oct. 6, 2020); *In re NPC International, Inc.*, No. 20-33353 (DRJ) (Bankr. S.D. Tex. Oct. 26, 2020) (same); *In re Chesapeake Energy Corp.*, No. 20-33233 (DRJ) (Bankr. S.D. Tex. Oct. 22, 2020) (granting 90-day initial extension without prejudice to debtors' ability to seek additional extensions); *In re Neiman Marcus Group LTD LLC*, No. 20-32519 (DRJ) (Bankr. S.D. Tex. Sept. 25, 2020) (same); *In re Sanchez Energy Corp.*, No. 19-34508 (MI) (Bankr. S.D. Tex. Jan. 8, 2020) (same); *In re Covia Holdings Corp.*, No. 20-33295 (DRJ) (Bankr. S.D. Tex. Nov. 10, 2020) (same); *In re Seadrill Partners LLC*, No. 20-35740 (DRJ) (Bankr. S.D. Tex. Apr. 6, 2021) (same); *In re CBL & Associates Properties, Inc.*, No. 20-35226 (DRJ) (Bankr. S.D. Tex. Mar. 19, 2021) (same); *In re CEC Entertainment, Inc.*, No. 20-33163 (MI) (Bankr. S.D. Tex. Nov. 20, 2020) (same).

## Cause Exists to Extend the Exclusivity Periods

### I. The Debtor's Chapter 11 Case Is Large and Complex.

16. This chapter 11 case is large, complex and unique in many respects. Assets and liabilities exceed $2 billion; the Debtor's Co-Op Members' (as defined below) service territory extends across 68 counties from the Texas Panhandle to Houston, ultimately impacting over 1.5 million Texans—many of whom live in rural communities. The Debtor's chapter 11 case came about unexpectedly resulting from catastrophic failures that accompanied the Black Swan Winter Event that blanketed the State of Texas beginning on or about February 13, 2021 and which maintained its grip of historically sub-freezing temperatures for days. The bankruptcy case was filed while the Texas Legislature was in session and, as a result, lawmakers sought to enact emergency legislation that would attempt to address the fallout from the Black Swan Winter Event.

The Legislature ultimately passed several bills related to the Black Swan Winter Event Winter, including House Bill 4492 ("H.B. 4492"), which seeks to defray certain costs incurred by ERCOT power region market participants, and Senate Bill 1580 ("S.B. 1580"), which enables electric cooperatives to use securitization financing to recover certain extraordinary costs and expenses. Texas Governor Greg Abbott signed H.B. 4492 and S.B. 1580 into law on June 16 and June 18, respectively. Although the Debtor's and its advisors' analysis is ongoing, these laws appear to only compound the complexities of the Debtor's case, raising potential hurdles to the Debtor's ability to continue as a market participant in the ERCOT power region and complicating the Debtor's restructuring strategy and ongoing plan negotiations. In addition, the legal, economic, and practical realities of formulating a chapter 11 plan for a member-owned non-profit electric cooperative are unique and more complicated than those facing a typical for-profit debtor where equity is often out of the money and have little interest left to preserve.

17. The scale and complexity of the Debtor's operations mean that the Debtor must address numerous challenges during this chapter 11 process. As the undisputed evidence shows, the Debtor is Texas's largest and oldest generation and transmission electric cooperative with more than 2,682 miles of transmission line and 385 substations/delivery points, making it Texas's seventh largest transmission provider. The Debtor generates power and energy through its owned-generation plants and procures power and energy through short-term and long-term Power Purchase Agreements ("PPAs") which it sells into the ERCOT market, through which it purchases power and energy to sell at wholesale through All-Requirements Contracts to Debtor's 16 member distribution cooperatives, which are also member-owned (collectively, the "Co-Op Members"), which Co-Op Members sale such power and energy to the Co-Op Members' retail consumer members. The Debtor has significant obligations to a number of stakeholders, including

approximately 370 employees (excluding contract employees), vendors, Co-Op Members, government agencies, and many contract counterparties.

18. Additionally, the Debtor has an array of sophisticated, well-represented stakeholders that have taken an active role in this chapter 11 case. Administering this case requires strenuous dedication and input from Debtor's management team and advisors on a wide range of complicated matters, all of which are essential to bring structure and consensus to a large and complex process. Notwithstanding these challenges, the Debtor has made substantial progress toward formulating and proposing a chapter 11 plan that the Debtor believes would maximize value for its stakeholders and ensure that the Debtor can continue to carry out its mission to provide its Co-Op Members with affordable and reliable power.

19. Courts have acknowledged that the size and complexity of a debtor's case alone may provide cause for extending a debtor's exclusivity periods. *See Express One*, 194 B.R. at 100 (approving the debtor's third exclusivity extension and noting that "the traditional ground for cause is the large size of the debtor and the concomitant difficulty in formulating a plan of reorganization"); *see also In re Texaco Inc.*, 76 B.R. at 326 ("The large size of the debtor and the consequent difficulty in formulating a plan of reorganization . . . are important factors which generally constitute cause for extending the exclusivity periods") (internal citations omitted). In general, large, complex chapter 11 cases take substantial time to reach confirmation. *See, e.g., In re IHeart Media, Inc.* No. 18-31274 (MI) (Bankr. S.D. Tex. Nov. 19, 2018) (granting second extension of exclusive filing period of approximately 75 days); *In re GenOn Energy, Inc.*, No. 17-33695 (Bankr. S.D. Tex. April 9, 2018) (granting second extension of exclusive filing period of approximately 8 months for a total 18-month exclusive filing period) *In re SandRidge Energy, Inc.*, No. 16-32488 (Bankr. S.D. Tex. February 8, 2017) (granting second extension of exclusive

filing period of approximately 10 months for a total 18-month exclusive filing period); *In re Sherwin Alumina Co.*, LLC, No. 16-20012 (Bankr. S.D. Tex. Aug. 23, 2016) (granting second extension of exclusive filing period of approximately 90 days for total 12-month exclusive filing period); *In re UGHS Senior Living, Inc.*, No. 15-80399 (Bankr. S.D. Tex. May 23, 2016) (granting second extension of exclusive filing period for total 9-month exclusive filing period); *In re TSA WD Holdings, Inc., et al.* (*f/k/a Sports Authority Holdings, Inc.)*, No. 16-10527 (MFW) (Bankr. D. Del. 2016) (643 days between petition date and the date set for confirmation hearing); *In re Edison Mission Energy*, No. 12-49219 (JPC) (Bankr. N.D. Ill. 2012) (450 days between petition date and confirmation hearing); *In re BB Liquidating Inc., et al.* (f/k/a Blockbuster Inc., et al.), No. 10-14997 (CGM) (Bankr. S.D.N.Y. 2010) (1,028 days between petition date and confirmation hearing); *In re Circuit City Stores, Inc.*, No. 08-35653 (KRH) (Bankr. E.D. Va. 2008) (670 days between petition date and confirmation hearing).

20. Here, the size and complexity of this chapter 11 case alone warrants the requested extension of the Exclusivity Periods.

**II.   The Debtor Has Stabilized Its Business and Is Making Substantial Progress Toward Effectuating a Reorganization.**

21. Since the Petition Date, the Debtor has efficiently and successfully managed its estate and made substantial progress in this chapter 11 case. After transitioning into chapter 11, stabilizing its business operations, and obtaining the Court's approval, on a final basis, of a critical $350 million debtor-in-possession financing (the "<u>DIP Facility</u>"), the Debtor, among other things, has:

> i. secured first and second-day relief to continue operating its business, including authorization to (a) continue using the existing cash management system, (b) implement a critical-vendor program to stabilize business operations; (c) pay necessary wages and employee-related obligations; (d)

pay certain PPAs and transmission claims, and (e) pay certain necessary tax obligations;

ii. held calls with the Debtor's management team and the Committee and its members to both introduce the Debtor and its case and to preliminary discuss potential restructuring and other case issues;

iii. filed schedules of assets and liabilities and statements of financial affairs (some of which have also been amended), as well as every monthly operating report;

iv. obtained the Court's approval for the establishment of claims bar dates (the general claims bar date has now passed, but the tort claims bar date and governmental unit bar date are set for August 5 and September 3, respectively) and started to review, analyze, and prepare objections to certain of the filed claims, analyzing the same, and preparing objections to the same;

v. obtained the Court approval to retain restructuring professionals and ordinary-course professionals;

vi. obtained the Court's approval to continue the Debtor's pre-petition hedging and trading program and entered into a number of new and amended hedging-and-trading arrangements;

vii. pursuant to the Court's authorization, entered into forbearance and related agreements with the Debtor's subsidiary, Brazos Sandy Creek Electric Cooperative, Inc. ("BSCEC");

viii. obtained Court's approval of the Debtor's key employee retention plan and key employee incentive plan;

ix. filed a motion to establish procedures for the sale or transfer of certain de minimis assets in connection with condemnation matters and other de minimis assets in the ordinary course of business, free and clear of liens, claims, interests, and encumbrances;

x. negotiated and procured a protective order to protect sensitive information produced in connection with this case from public disclosure;

xi. provided the Committee and other parties in interest with substantial diligence and discovery regarding the Debtor and its business and assets;

xii. established the Bankruptcy Advisory Committee to assist the Debtor's effort to navigate potential conflict issues that may arise in this chapter 11 case (including the "Issue" that was designated by the Debtor to the

       Bankruptcy Advisory Committee in connection with the Debtor's debtor-in-possession financing motion);

xiii. held weekly calls with Committee professionals (including additional weekly calls with the Debtor's lobbyist);

xiv. analyzed H.B. 4492 and S.B. 1580 to determine its relationship to and impact on the Debtor and this case, including an effort to have that legislation vetoed by the Texas Governor;

xv. retained special litigation contingency counsel to assist the Debtor in pursuing potential claims against certain parties;

xvi. begun to analyze, model, and socialize various potential restructuring alternatives, including options available to the estate through a securitization financing of the Black Swan Winter Event claims and costs; and

xvii. addressed related issues.

22. Having made substantial progress to date, additional significant work is required before the Debtor can prepare a meaningful disclosure statement, propose a chapter 11 plan of reorganization and emerge from chapter 11. Importantly, the Debtor's claims-review and reconciliation processes have only just begun and cannot be completed until sometime after the Tort Claims Bar Date (*i.e.*, August 5, 2021) and Governmental Bar Date (*i.e.*, September 3, 2021) occur. In order for the Debtor to provide adequate information regarding expected distributions to creditors in the disclosure statement to be filed by the Debtor, the Debtor submits that it is necessary to extend the Exclusivity Periods until after the passage of the those Bar Dates to provide the Debtor sufficient time to review and analyze the claims that are filed to determine the proper amounts of such claims. In addition, the Debtor is analyzing a number of potential restructuring strategies and transactions, including any litigation that may need to be commenced or resolved in connection with a chapter 11 plan, potential challenges related to H.B. 4492 and S.B. 1580, and various options concerning securitization financings for the Black Swan Winter Event and related costs.

### III. An Extension of the Exclusivity Periods Is in the Best Interest of the Creditors.

23. The Debtor also seeks to maintain exclusivity in order to avoid unnecessary and unproductive disputes which would hinder Debtor's efforts to propose a consensual, value-maximizing restructuring. Extending the Exclusivity Periods will permit the Debtor to continue prosecuting its value-maximizing restructuring process. An extension of the Exclusivity Periods will benefit all creditors by preventing a drain on estate assets that inevitably occurs when multiple parties, with potentially diverging interests, vie for the consideration of their own chapter 11 plans. All stakeholders benefit from the continued stability and predictability that a centralized plan process provides, which can only occur while the Debtor remains the sole potential plan proponent.

24. In furtherance of that centralized plan process, the Debtor has been in extensive communication with all parties in interest and will continue such discussions as it seeks to build consensus around the restructuring transaction. Moreover, even if the Court approves one or more extensions of the Exclusivity Periods, nothing prevents a party in interest, acting in good faith, from later arguing that cause supports termination of the Exclusivity Periods. Accordingly, an extension of the Exclusivity Periods is in the best interests of the Debtor's estate, its creditors, and all other parties in interest.

### IV. The Debtor Is Not Pressuring Creditors by Requesting an Extension of the Exclusivity Periods.

25. The Debtor's restructuring process is intended to confirm a plan that maximizes the value of the Debtor's estate for all stakeholders. Since the commencement of this chapter 11 case, the Debtor has worked diligently and in a constructive manner with stakeholders to evaluate restructuring alternatives to build consensus for Debtor's chapter 11 reorganization. The Debtor's exclusivity extension request is not intended to pressure creditors, but to provide sufficient time

for the Debtor to propose and confirm the chapter 11 plan and implement the transactions contemplated thereby without the disruption and distraction created by competing plan proposals. Accordingly, the Debtor is not seeking an extension to pressure its creditors or other parties in interest.

26. Courts may also consider practical factors in determining that "cause" exists to extend the exclusive periods. *See Borders,* 460 B.R. at 827-28 (noting that it was important for the Court to consider practical factors in refusing to terminate exclusivity). Refusing to grant this Motion and to extend the Exclusivity Periods at this stage would adversely affect the Debtor's administration of this chapter 11 case and will undo the hard work and effort that the Debtor's employees and professionals have put into stabilizing business operations and exploring potential restructuring transactions. The Debtor and its advisors have worked hard to build trust with key stakeholders (including RUS, the Co-Op Members, and the Committee) and their respective professionals and hope that all parties can continue to be transparent, cooperative, and constructive. The Debtor has engaged extensively with all parties and will continue to do so when possible in an attempt to achieve a fully consensual chapter 11 plan. The Debtor and its professionals believe that their conduct in this case to date demonstrates that they are acting in good faith and in a prudent, transparent manner and are not seeking these extensions to artificially delay the administration of this chapter 11 case.

### V.    The Debtor Is Paying Its Bills as They Come Due.

27. The Debtor has paid its postpetition debts in the ordinary course of business (unless otherwise provided by an order of the Court), and has secured final approval for the continued use of cash collateral and access to additional liquidity under the DIP Facility. The Debtor will continue to pay its bills in the ordinary course as they become due and owing. The Debtor

continues to monitor its liquidity closely and is confident that sufficient funding will be available during the requested extension of the Exclusivity Periods.

### VI.     Relatively Little Time Has Elapsed in this Chapter 11 Case.

28.     Additionally, the relatively early stage of this chapter 11 case further supports the requested extensions of the Exclusivity Periods.  The complex issues in this chapter 11 case make clear that the Debtor needs additional time to continue to consult and negotiate with stakeholders concerning a variety of restructuring strategies and other issues. *See, e.g., In re Energy Future Holdings Corp.*, No. 14-10979 (Bankr. D. Del. 2014), Hr'g Tr. Sept. 16, 2014, 73:21-25 (granting debtors' request for a six-month extension because "just a two month or three month even extension of exclusivity won't accomplish anything, we're going to be right back here having the same argument and you're going to get the same ruling, provided things continue to move").

29.     Accordingly, the facts and circumstances of this case are more than sufficient to support a finding of "cause" to extend the Exclusivity Periods for an initial 120-day period so that the Debtor and its stakeholders may realize the benefits of the substantial progress made to date and avoid the risks of any competing plan proposals.  An objective analysis of the relevant factors demonstrates that the Debtor is doing everything that it should be doing as chapter 11 debtor to facilitate a successful conclusion to this complex chapter 11 case.  Thus, the Debtor respectfully submits that sufficient cause exists to extend the Exclusivity Periods as provided herein.  As noted above, courts in this district have granted relief similar to that requested herein.

### **NOTICE**

30.     Notice of this Motion will be provided by first class mail and/or e-mail or facsimile to those parties on the Master Service List.  The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

## **PRAYER**

WHEREFORE, the Debtor respectfully requests that the Court enter an order, granting the relief requested in this motion and granting such other and further relief as is appropriate under the circumstances.

Dated: June 28, 2021
      Houston, Texas

                Respectfully submitted,

                **NORTON ROSE FULBRIGHT US LLP**

                By: */s/ Jason L. Boland*
                Louis R. Strubeck, Jr. (SBT 19425600)
                Jason L. Boland (SBT 24040542)
                Julie G. Harrison (SBT 24092434)
                Maria Mokrzycka (SBT 24119994)
                1301 McKinney Street, Suite 5100
                Houston, TX 77010
                Telephone: (713) 651-5151
                Facsimile: (713) 651-5246
                Email: louis.strubeck@nortonrosefulbright.com
                Email: jason.boland@nortonrosefulbright.com
                Email: julie.harrison@nortonrosefulbright.com
                Email: maria.mokrzycka@nortonrosefulbright.com

                Michael M. Parker (SBT 00788163)
                Steve A. Peirce (SBT 15731200)
                111 West Houston Street, Suite 1800
                San Antonio, TX  78205
                Telephone: (210) 270-7179
                Facsimile:  (210) 270-7205
                Email: michael.parker@nortonrosefulbright.com
                Email: steve.peirce@nortonrosefulbright.com

                COUNSEL FOR THE DEBTOR
                AND DEBTOR IN POSSESSION